

Signed/Docketed
February 15, 2013

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

In re: )
) Case No. 12-28423 MER
ANDREA DEE DENNIS )
) Chapter 13
)
Debtor. )

## ORDER

This matter comes before the Court on the *Debtor's Objection to River Bend Financial Corporation's Proofs of Claims* (the "Objection"), and the response filed by River Bend Financial Corporation ("River Bend"). A hearing was held on the matter after which the Court allowed the parties to file a stipulation of facts. Based on that stipulation, and on its review of the file and relevant law, the Court finds and concludes as follows.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B), as it involves the administration of a bankruptcy estate and the allowance or disallowance of claims against the estate.

## BACKGROUND FACTS

The parties have stipulated to the following facts:[1]

1. Debtor Andrea Dennis ("Dennis") is indebted to River Bend pursuant to a promissory note in the original principal amount of $170,000.00 ("Note 1") dated February 5, 2010, which was assigned to River Bend pursuant to an Assignment of Note and Deed of Trust dated May 3, 2012, and recorded May 7, 2012, in the records of Arapahoe County Clerk and Recorder.

2. Note 1 is an adjustable interest rate promissory note with an initial interest rate of 11.25 percent and with a default interest rate of the lesser of the rate of 24 percent per annum or the maximum rate allowed by law.

---

[1] *See* Docket No. 67, Stipulation of Facts.

3. Dennis is also indebted to River Bend pursuant to a promissory note in the original principal amount of $45,000.00 dated July 16, 2010 ("Note 2").

4. Note 2 is an adjustable interest rate promissory note with an initial interest rate of 13.00 percent and with a default interest rate of the lesser of the rate of 29 percent per annum or the maximum rate allowed by law.

5. As security and additional consideration for the Notes, Dennis executed a deed of trust securing Note 1 dated February 5, 2010 ("Deed of Trust 1") recorded on February 12, 2010, at Reception No. D0014655 of the records of the Arapahoe County Clerk and Recorder, and a deed of trust securing Note 2 dated July 16, 2010 ("Deed of Trust 2") recorded July 19, 2010, at Reception No. D0068874 of the records of the Clerk and Recorder of Arapahoe County, Colorado.[2]

6. River Bend is the current owner and holder of the Notes and Deeds of Trust by virtue of the Assignment and its possession of said original Notes and original Deeds of Trust.

7. The Notes state: "[f]ailure to pay any installment of principal and/or interest or to pay principal and interest when due" constitutes an event of default. *See* Note 1, ¶ 7 and Note 2, ¶ 7.

8. The Notes further state: "[u]pon the occurrence of any such event of default hereunder, the entire outstanding principal balance shall, at the option of the Holder, at once become due and payable in full" and that "[m]aker agrees to pay a late charge of ten percent (10%) of the unpaid amount of an installment that is not paid when due or within three (3) days thereafter, including the monthly payments and all payments of principal including any payment due upon acceleration or at maturity. . . ." *See* Note 1, ¶¶ 8-9 and Note 2, ¶¶ 8-9.

9. Dennis is in default in the performance of the terms and conditions of the Notes and Deeds of Trust by her failure to make monthly payments and her failure to pay the accelerated amounts due after defaulting on the monthly payments.

10. Dennis failed to make payments on Note 1 beginning with the payment due April 1, 2012. Thereafter, the debt was accelerated pursuant to the terms of Note 1.

---

[2] Although not mentioned in the Stipulation of Facts, the parties do not dispute the deeds of trust encumber real property owned by Dennis located at 4872 South Perth Street, Centennial, Colorado 80015.

11. Dennis failed to pay the accelerated total amount due and River Bend assessed a ten percent late charge or "acceleration fee" pursuant to the terms on Note 1.

12. Dennis failed to make payments on Note 2 beginning with the payment due February 1, 2012. Thereafter, the debt was accelerated pursuant to the terms of Note 2.

13. Dennis failed to pay the accelerated total amount due and River Bend assessed a ten percent late charge or "acceleration fee" pursuant to the terms on Note 2.

14. The defaults, penalties, and acceleration fees on the Notes occurred prior to Dennis filing her chapter 13 bankruptcy petition.

15. Dennis filed her petition for Chapter 13 bankruptcy on September 1, 2012.

16. River Bend filed a Proof of Claim for Note 1 on September 17, 2012, and filed amended Proofs of Claim for Note 1 on October 4, 2012, and November 2, 2012 ("Amended Claim No. 5-2").

17. River Bend's Amended Claim No. 5-2 includes an "acceleration fee per Note" in the amount of $16,920.60 due and owing to River Bend as of September 1, 2012, the date Dennis filed her Chapter 13 bankruptcy petition.

18. River Bend filed a Proof of Claim for Note 2 on September 17, 2012, and filed an amended Proof of Claim for Note 2 on October 4, 2012 ("Amended Claim No. 6-2").

19. River Bend's Amended Proof of Claim No. 6-2 includes an "acceleration fee per Note" in the amount of $4,500.00 due and owing to River Bend as of September 1, 2012, the date Dennis filed her Chapter 13 bankruptcy petition.

**POSITIONS OF THE PARTIES**

Dennis does not contest the principal amounts of the debts asserted by River Bend's amended proofs of claim, but objects to the inclusion of the acceleration fees of $16,920.60 on Note 1 and $4,500.00 on Note 2. She points

out 11 U.S.C. § 1322(b)(3)[3] provides a Chapter 13 plan may "provide for the curing or waiving of any default." She argues "curing" means restoring matters to the way they were before default, so "de-accelerating," or eliminating acceleration fees, is permissible under that section.[4]

River Bend asserts the acceleration fees are necessary to cure the defaults because the debts were accelerated prior to the Debtor's bankruptcy filing and because the Notes provided for the payment of such fees. River Bend points out § 1322(e) states: "Notwithstanding subjection (b)(2) of this section and sections 506(b) and 1325(a) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, [sic] shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."[5]

## DISCUSSION

In 1993, the Supreme Court found interest must be paid on mortgage arrearages even if it was not required by the underlying contract or prohibited by state law.[6] To avoid such a result in future cases, in 1994 Congress enacted § 1322(e), which provides that with respect to mortgages entered into after the enactment date, the only interest required to be paid to cure a plan default is interest permitted by both the contract and applicable nonbankruptcy law. Specifically, the legislative history indicates:

> [*Rake v. Wade*] had the effect of giving secured creditors interest on interest payments, and interest on the late charges and other fees, even where applicable law prohibits such interest and even where it was not contemplated by either party in the original transaction. [Section 1322(e)] will limit the secured creditor to the benefit of the initial bargain. . . . It is the Committee's intention that a cure pursuant to a plan should operate to put the Debtor in the same position as if the default had never occurred.[7]

---

[3] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

[4] The Debtor cites to *In re Thompson*, 894 F.2d 1227, 1228 (10th Cir. 1990) and cases cited therein, in which the Court noted circuit courts addressing the issue of accelerated mortgage debts have found a debtor may cure a mortgage default by paying the amount of the default instead of the entire accelerated debt.

[5] Section 1322(e).

[6] *Rake v. Wade*, 508 U.S. 464, 470 (1993).

[7] HR Rep. 103-834, 103d Cong., 2d Sess. 39 (Oct. 4, 1994); 140 Cong. Rec. H10770 (Oct. 4, 1994).

Thus, as explained by COLLIER:

> Under section 1322(e), the amount necessary to cure a default is the same amount as would be required to cure if the debtor were not in bankruptcy. Two conditions must be met before interest or other charges can be required as part of a bankruptcy cure. First, the interest or charges must be required under the original agreement, and second, they cannot be prohibited by state law.[8]

Accordingly, the Court must determine whether the parties' agreements provide for the payment of the disputed fees, and, if they do, whether such payments are prohibited under Colorado law. As described above, the Notes given by Dennis to River Bend expressly state: "[f]ailure to pay any installment of principal and/or interest or to pay principal and interest when due" constitutes an event of default.[9] The Notes also provide:

> [u]pon the occurrence of any such event of default hereunder, the entire outstanding principal balance shall, at the option of the Holder, at once become due and payable in full. . . . [m]aker agrees to pay a late charge of ten percent (10%) of the unpaid amount of an installment that is not paid when due or within three (3) days thereafter, including the monthly payments and all payments of principal including any payment due upon acceleration or at maturity. . . .[10]

Therefore, the Court finds the agreements of the parties provide for the disputed assessments.

Colorado statutory law allows for a cure of a default under a promissory note or deed of trust, if the underlying deed of trust is being foreclosed.[11] Indeed, Dennis's Statement of Financial Affairs in the instant case, the contents

---

[8] 8 COLLIER ON BANKRUPTCY, ¶ 1322.19 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.). *See also In re Lamelas*, 2013 WL 324028, at *4 (Bankr. S.D. Fla. Jan. 28, 2013) (Slip copy) (citing COLLIER).

[9] Note 1, ¶ 7 and Note 2, ¶ 7.

[10] Note 1, ¶¶ 8-9 and Note 2, ¶¶ 8-9.

[11] *See* COLO. REV. STAT. § 38-38-104; *In re Sweet*, 369 B.R. 644, 649-650 (Bankr. D. Colo. 2007).

of which the Court may take judicial notice,[12] indicates River Bend commenced a foreclosure action on May 11, 2012, with the foreclosure sale scheduled for September 5, 2012.[13] When a foreclosure has been filed, Colorado statutory law indicates the cure amount may include such items as late charges, attorneys' fees, and other costs.[14] Therefore, the Court finds the disputed charges are not prohibited by Colorado law.

For the above reasons,

IT IS ORDERED the *Debtor's Objection to River Bend Financial Corporation's Proofs of Claims* is hereby DENIED.

Dated February 15, 2013        BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge

---

[12] *See In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *In re Richter*, 478 B.R. 30, 37 (Bankr. D. Colo. 2012).

[13] Statement of Financial Affairs, Response to Question 5.

[14] *See* COLO. REV. STAT. § 38-38-104(2)(a)(II), and the form contained therein listing possible items in a cure amount. *See also Ulander v. Allen*, 37 Colo. App. 279, 281 (Colo. App. 1976) ("This statute allows one liable under a note and deed of trust or mortgage, whose only default is nonpayment, to cure the default by tender of the delinquent payments due plus costs, late charges, and attorneys' fees.").